DA 23-0464

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 162N

IN THE MATTER OF:

R.L.R.G., and L.P.H.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DN-19-17
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Austin Wallis, Hathaway Law Group, Missoula, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

          Kendra Lassiter, Park County Attorney, Deb Pratt, Deputy County Attorney, Livingston, Montana

Submitted on Briefs:  July 10, 2024

Decided:  July 30, 2024

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 N.G. appeals an order from the Sixth Judicial District Court, Park County, terminating his parental rights to R.L.R.G. and L.P.H. We affirm.

¶3 R.L.R.G., born 2019, and L.P.H., born 2012, were removed from H.H.'s (Mother) and N.G.'s (Father) custody in December 2019 based on the parents' history of substance abuse and domestic violence issues. Between 2014 and 2019, the Child and Family Services Division (CFS) of the Department of Health and Human Services (DPHHS) investigated 15 abuse and neglect reports involving altercations between Mother and Father. Mother and Father's fights often took place in front of the children and were generally fueled by drugs and/or alcohol.

¶4 The District Court adjudicated R.L.R.G. and L.P.H. youths in need of care on Father's stipulations on January 17, 2020, and on Mother's stipulations on April 27, 2020. The District Court granted DPHHS temporary legal custody (TLC) of the children, which was ultimately extended twice.

¶5 Father signed a court-approved treatment plan that required him to follow chemical dependency and mental health evaluation recommendations; participate in drug and alcohol testing as directed; establish and maintain a safe and secure home, appropriate for

the children; refrain from involvement in criminal activity; maintain contact with DPHHS; participate in individual therapy; participate in visitation with the children; participate in couples' counseling with Mother; and complete a series of anger management sessions.

¶6 DPHHS filed a petition to terminate parental rights in December 2021. Following multiple continuances, a termination hearing was ultimately held in May 2023. The District Court entered orders terminating both parents' rights to R.L.R.G. and L.P.H. on July 18, 2023, three-and-a-half years after the proceedings began.

¶7 In its termination orders, the District Court cited several instances where Father failed to adhere to his treatment plan. Despite roughly a year-long period of sobriety, Father relapsed and tested positive for alcohol or drugs fifteen times between March and November 2021. During the same period, Father missed eight screenings, and ultimately stopped testing altogether. Additionally, Father discontinued recommended therapy and failed to maintain contact with Child Protective Specialist (CPS) Kathi Ellison. The record demonstrated that Father's relationship never stabilized with Mother. During the children's out-of-home placement, Father was arrested for Partner-Family-Member Assault (PFMA) against Mother twice, and Mother against Father once.

¶8 The District Court's findings further noted that DPHHS made reasonable efforts to reunite the family, including the development of treatment plans; referrals and payments for chemical dependency and mental health evaluations and treatment; supervised parenting time; TLC extensions; family engagement meetings; and attempts to engage Father in counseling services.

¶9 On appeal, Father argues that DPHHS failed to make reasonable efforts toward reunification by neglecting to recognize the successful efforts he made toward achieving sobriety and creating a safe and stable home for the children. Father avers DPHHS did not increase visitation during his period of sobriety and failed to provide him with "a clear path towards reunification," causing the feelings of disenfranchisement that led to his relapse.

¶10 We review a district court's decision to terminate parental rights for an abuse of discretion. *In re A.B.*, 2020 MT 64, ¶ 23, 399 Mont. 219, 460 P.3d 405. An abuse of discretion occurs when a district court acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *In re A.B.*, ¶ 23. "We will not disturb a district court's decision on appeal under these circumstances unless there is a mistake of law or a finding of fact not supported by substantial evidence that would amount to a clear abuse of discretion." *In re D.B.*, 2012 MT 231, ¶ 17, 366 Mont. 392, 288 P.3d 160 (internal quotation omitted).

¶11 Section 41-3-609, MCA, enumerates the provisions under which a district court may terminate parental rights. When a child is adjudicated a youth in need of care, the district court may order termination if "(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time." Section 41-3-609(1)(f), MCA. Among the factors the court may consider in determining whether a parent will "change within a reasonable time" are their "history of violent behavior . . . [and] excessive use of intoxicating liquor or of a narcotic or dangerous drugs that affects [their] ability to care and provide for the child . . . ."

4

Section 41-3-609(2)(b)-(c), MCA. The "physical, mental, and emotional conditions and needs of the child" are the foremost concerns in balancing the parent's proclivity to change against the reasonableness of the time it is likely to take. Section 41-3-609(3), MCA.

¶12 We are not convinced that the District Court abused its discretion here. Father does not dispute that he agreed to a treatment plan. While his year-long period of sobriety and generally positive interactions with R.L.R.G. and L.P.H. indicate that, at certain points, he had a willingness and ability to change, Father consistently failed to adhere to the treatment plan throughout the course of these proceedings. He never demonstrated stability in his relationship with Mother. Ultimately, he relapsed and stopped pursuing therapy altogether. While Father's feelings of disenfranchisement are logical, "The success of the remedial services and rehabilitative programs concomitantly depends on the parents' ability and willingness to develop the necessary skills to provide their child with a safe living environment." *In re I.B.*, 2011 MT 82, ¶ 41, 360 Mont. 132, 255 P.3d 56. R.L.R.G. and L.P.H. were in foster care for nearly 24 months, during which time Father was able to demonstrate only a relatively brief period of sobriety and engagement with therapy and anger management services. Father failed to demonstrate an "ability or willingness" to provide for the needs of the children within a reasonable amount of time. *See* Section 41-3-604(3), MCA ("If a child has been in foster care under the physical custody of the state for 15 months of the most recent 22 months, the best interests of the child must be presumed to be served by termination of parental rights.").

¶13 The District Court did not abuse its discretion when it terminated Father's rights to R.L.R.G. and L.P.H. We have held that a parent's failure to follow a treatment plan may

be cause for termination. *In re D.B.*, ¶ 46. The District Court based its decision on substantial, credible evidence that Father failed to complete and repeatedly violated his treatment plan. *In re A.B.*, ¶ 23. There was clear and convincing evidence that it was in the best interests of the children to terminate Father's parental rights to R.L.R.G. and L.P.H. *In re A.B.*, ¶ 23.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶15 Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON